UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| CROW CREEK SIOUX TRIBAL FARMS, INC., AND CROW CREEK SIOUX TRIBE, | * * * * | CIV. 09-3031-RAL |
| Plaintiffs, | * * | |
| vs. | * * | OPINION AND ORDER DENYING PLAINTIFF'S |
| UNITED STATES INTERNAL REVENUE SERVICE AND JAMES DAUGHERTY, E. HANNIFIN, AND STEVE HOPKINS, EMPLOYEES OF THE INTERNAL REVENUE SERVICE, | * * * * * * | MOTION FOR TEMPORARY RESTRAINING ORDER |
| Defendants. | * * | |

## I. INTRODUCTION

On December 2, 2009, Plaintiffs Crow Creek Sioux Tribe ("the Tribe") and Crow Creek Sioux Tribal Farms, Inc. filed a motion seeking a temporary restraining order ("TRO motion") to stop a public auction of land set for the next day, December 3, 2009. (Doc. 7). The TRO motion was filed one day after the Plaintiffs filed their Verified Complaint seeking injunctive relief. (Doc.1).

Counsel for Defendants notified the Court on December 2 that they opposed the TRO motion. The Court held a hearing on the TRO motion on December 2, at 12:00 p.m., with the attorneys for all parties appearing and participating. The Court posed multiple questions to the parties concerning the real estate at issue and scheduled public auction of that real estate. From the hearing and review of the record, the Court gained as full an understanding of this

1

case as possible under the limited time available before the necessity of a ruling on the TRO motion. For the reasons explained during the hearing and elaborated upon below, the Court has denied the TRO motion, declines to grant preliminary injunctive relief, but has set a trial of the case for March 29 and 30, 2010, to avert irreparable injury to any party.

## II. SUMMARY OF FACTS

The Court draws the facts from the pleadings of record, matters of which the Court takes judicial notice such as the bankruptcy court filing by Crow Creek Tribal Farms, Inc., and information provided at the hearing on December 2, 2009. The Court had to rule on extremely short notice and a limited record, so nothing in this opinion and order is meant to be taken as a final ruling.

The Tribe is a federally recognized Indian Tribe with certain sovereign power and authority within the Crow Creek Indian Reservation. In 2003, the Tribe became delinquent in payment of employment taxes collected by the Internal Revenue Service ("IRS"). The Tribe claims that it relied on erroneous advice from the Bureau of Indian Affairs for not remitting employment taxes, but does not dispute in its Verified Complaint that it owes substantial amounts to the IRS. (Doc. 1).

In order to collect the delinquent employment taxes, the IRS has levied on property and money of the Tribe. The Tribe has made some attempts to pay the arrearage and subsequent amounts as they come due, but has been unable to bring the employment taxes current. That arrearage, plus penalties and interest sought by the IRS, presently exceeds $3.1 million. (Doc. 1).

The land at issue, called the LeMaster Ranch, is located primarily in Hyde County,

South Dakota, and apparently was part of the original Crow Creek Indian Reservation as established by the Treaty of 1868 and congressional enactments in 1868 and 1889. The land, previously held in trust by the United States government for the Tribe and its members, was sold out of trust in fee status some years ago and ultimately was purchased by the LeMasters. As part of its land consolidation efforts, the Tribe purchased the land, consisting of approximately 7,100 acres, from the LeMasters in 1998. The land is currently leased to Todd Cowan under a long-term lease. Mr. Cowan has made the payment for 2009 to the Tribe or to the entity that the Tribe created under tribal law called Crow Creek Tribal Farms, Inc. ("the Tribal corporation"). (Doc. 1).

The bankruptcy court file provides a history of the IRS's efforts to seize and sell the land. The IRS served notice of federal tax liens on the Tribe and filed those notices in the Register of Deeds Office for Hyde County on July 18, 2005; November 14, 2005; April 20, 2006; April 12, 2007; August 28, 2007; January 2, 2008; January 22, 2008; and October 14, 2008, and with the Register of Deeds Office for Hughes County on April 12, 2007; January 2, 2008; January 22, 2008; and October 14, 2008. These Notices of Federal Tax Lien related to the Form 668B Levy. The Form 668B Levy identified both employer payroll obligations and employment taxes owed by the Tribe through December 31, 2008. (D.S.D. Bankruptcy 09-30021, Doc. 35).

On December 3, 2008, the IRS served the Levy and a Form 2433 Notice of Seizure upon the Tribe seizing the approximately 7,100 acres of non-trust real property located in Hyde County known as the Lemaster Ranch, a Lease Agreement (between the Tribe and Todd Cowan) for the same property, and ten acres in Hughes County. (Bankr. Doc. 35).

Custody of the seized LeMaster Ranch property was turned over to a Property Asset and Liquidation Specialist for disposition. A seizure sale was scheduled for 10:00 a.m., on May 8, 2009, in Highmore, South Dakota, with the proceeds of the auction sale to be applied to the Form 668B Levy dated November 6, 2008, and subsequent tax liabilities of the Tribe. (Bankr. Doc. 35).

On May 8, 2009, the Tribe or the Tribal corporation filed a warranty deed with the Hyde County Register of Deeds at 9:40 a.m., twenty minutes before the scheduled sale, transferring title to the LeMaster Ranch from the Tribe to the Tribal corporation. The only consideration explicitly listed in the deed and certificate of value filed with the deed was one dollar. (Doc. 1, Exhibit 3). At the hearing of the TRO motion, the parties acknowledged that there was minimal consideration for the transfer. The Tribal corporation then filed a bankruptcy petition, triggering an automatic stay. As a result, the public auction set for May 8, 2009, did not occur.

Then, the IRS, through its employees, who are named as individual defendants in this case, exercised collection rights through a Notice of Public Auction Sale dated October 23, 2009, to sell the 7,100 acre LeMaster Ranch, owned by the Tribe or the Tribal corporation on December 3, 2009, at 10:00 a.m. at the Hyde County Courthouse in Highmore, South Dakota. (Doc. 1, Exhibit 2). The public auction notice, dated October 23, 2009, included a right of redemption provision as follows:

> (1) Period.–The owners of any real property sold as provided in section 6635, their heirs, executors, or administrators, or any person having any interest therein, or a lien thereon, or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property at any time within 180 days after the sale thereof.

> (2) Price.—Such property or tract of property shall be permitted to be redeemed upon payment to the purchaser, or in case he cannot be found in the county in which the property to be redeemed is situated, then to the Secretary, for the use of the purchasers, their heirs, or assigns, the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum.

(Doc. 1, Exhibit 2).

Under this provision, the Tribe and the Tribal corporation have a 180-day period after the sale during which the property can be redeemed. A party exercising redemption rights must pay the sale price plus a 20 percent per annum interest rate to the purchaser at the public auction. At the hearing, neither Plaintiffs nor Defendants explained how either party's injury would be irreparable if the case were resolved within 180 days of the public auction, in light of the opportunity to redeem. Neither party gave reason why the Court could not order the Defendants to redeem if the sale were found to have been unlawful. The Plaintiffs' attorneys argued that the Tribe is impoverished, that the Tribe has been pursuing financing, that the Tribe needs more time to come up with the money owed, that negotiations are ongoing with the IRS over possible reduction of the amount, and that the land has great value culturally and economically for the Tribe. For reasons discussed below, the Plaintiffs' arguments do not satisfy the irreparable harm element to justify the requested injunction, especially in light of the redemption rights.

### III. DISCUSSION

**A.   Legal Standard**

The Plaintiffs moved under Rule 65(b) of the Federal Rules of Civil Procedure for a temporary restraining order directing the Defendants to cease, desist from and suspend any

5

and all further actions directed towards seizing and selling the LeMaster Ranch. Defendants received notice of the TRO motion and appeared at the December 2, 2009 hearing on the motion. Therefore, the Court looks both to the standards governing TRO motions and to those applicable to preliminary injunction motions. See Saint v. Nebraska School Activities Ass'n, 684 F. Supp. 626, 627 n.1 (D.Neb.1988).

An injunction is an extraordinary remedy that is not routinely granted and generally reserved for when the right to relief is clear. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982); Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984); 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure, § 2942 at p. 43. In determining whether to issue such injunctive relief, the Court considers the factors set forth in Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981): (1) the threat of irreparable harm to plaintiffs; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the defendants; (3) the probability of plaintiffs' success on the merits; and (4) the public interest. See Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008); Oglala Sioux Tribe v. C&W Enterprises, Inc., 2009 U.S. Dist. LEXIS 25881, 3 (D.S.D. March 25, 2009) (applying Dataphase factors to TRO motion consideration). No single factor is determinative. The Court also considers the probability of the Plaintiffs' success in context of the relative injuries to the Plaintiffs, Defendants, and the public. See Dataphase Systems, 640 F.2d at 113.

B. **Dataphase Factors**

   1. **Threat of Irreparable Harm to Plaintiffs**

The Plaintiffs have failed to make a sufficient showing of a threat of immediate and irreparable harm. The irreparable harm necessary to justify granting a preliminary injunction exists only when the harm suffered impairs the Court's ability to grant an effective remedy to the moving party, if the moving party ultimately succeeds on the merits. See RoDa Drilling Co. v. Siegal, 552 F.3d 1202, 1210 (10th Cir. 2009) (finding that a plaintiff will have satisfied the irreparable harm requirement by showing that the harm experienced will be of the type that cannot be compensated after the fact by legal remedies). Put another way, irreparable harm exists when there is no adequate legal remedy for the movant should the case ultimately be adjudged in the movant's favor.

The Plaintiffs argue that they will suffer irreparable harm if preliminary injunctive relief is denied, including "a loss of rental income affecting their ability to carry on essential tribal services for the tribe's members, interference with tribal self-government, and impairment of tribal sovereignty." (Doc. 5 at p. 6-7). At the hearing, however, the parties acknowledged the Lemaster Ranch is subject to a rental agreement during the redemption period on which the Plaintiffs already have been paid. The Plaintiffs argue that selling the LeMaster Ranch property to satisfy the Tribe's tax liability will result in "injury that cannot be measured in monetary damages." (Doc. 5 at p. 7). The Court appreciates that the Tribe may sustain irreparable harm if it were to lose lands of cultural and historical significance, which are a part of the Tribe's efforts to consolidate land previously held in trust and to strengthen the Tribe. However, the Court takes into consideration the Plaintiffs' redemption rights under I.R.C. § 6337, which provides that within 180 days after such a sale of real property, the previous owners of the real property sold are permitted to redeem the property.

In light of these redemption rights, the Court finds that any harm is not irreparable at this time. The Court intends to rule on the merits within 180 days, and therefore, before the alleged irreparable harm can occur. If "a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief." 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 2009); see Matos v. Clinton School Dist., 367 F.3d 68, 74 (1st Cir. 2004) (denying injunctive relief because student-plaintiff would not graduate from college for three years, trial could occur during that time, and thus there was no immediate irreparable harm to her chances of entering graduate school to justify having the school immediately modify her records); Rodriguez v. DeBuono, 175 F.3d 227, 235 (2nd Cir. 1999) (refusing to grant a preliminary injunction because the harm faced by the movant was not so imminent to be irreparable).

Also relevant, though not dispositive, to determining whether there would be irreparable harm is a party's delay in seeking injunctive relief from the Court. The Plaintiffs waited to file their motion seeking a temporary restraining order until the day before the public auction of land set for December 3, 2009. (Doc. 7). The Plaintiffs knew of the planned public auction of the land since the October 23, 2009 notice, but waited nearly six weeks to file the Verified Complaint. (Doc. 1, Exhibit 2). The delay in filing the TRO motion may be viewed as indicating that the Plaintiffs would not suffer irreparable harm without the injunctive relief. See Utah Gospel Mission v. Salt Lake City Corp., 316 F. Supp. 2d 1201, 1221 (D.Utah 2004) (delay of three months in seeking a preliminary injunction "tends to indicate at least reduced need for such drastic, speedy action").

The Court is sensitive to and cognizant of the Tribe's economic plight, its efforts to

obtain financing and negotiate downward the debt to the IRS, and its wishes to obtain and own land previously held in trust. However, the redemption rights afford the Court either an opportunity within 180 days of the sale possibly to order the IRS to redeem the land if the Court finds the sale to have been unlawful, or alternatively an opportunity for the Plaintiffs to redeem the land if the Court does not so order. Because the Court expects to have this case concluded within the 180-day redemption period, there is an adequate legal remedy available to the Plaintiffs. The harm to the Plaintiffs, thus, is not irreparable, and injunctive relief is not warranted. See CDI Energy Services v. West River Pumps, Inc., 567 F.3d 398, 402-03 (8th Cir. 2009); Gelco Corp. v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987).

## 2. Injury to Defendants

The Court has balanced the harm to the Plaintiffs with the injury that issuing a temporary restraining order or preliminary injunction would inflict on the Defendants. As discussed above, the Plaintiffs' harm is an injury that can be avoided within the next 180 days, and thus is not irreparable. On the other hand, Defendants would suffer an injury, albeit a monetary one, if the Court were to issue injunctive relief, because such an injunction would prevent the IRS from going forward with the sale of the property and from collecting the tax liability owed by the Tribe.

## 3. Likelihood of Success on Merits

In considering the third factor, the Court engages in a balancing between the degree of likelihood of success on the merits and the relative injuries of the parties. See CDI Energy Services, 567 F.3d at 402-03. That is, even if there is a strong showing by the plaintiff of likelihood of success on the merits, preliminary relief is still only justified "if there is a risk

of irreparable harm and the balance of the factors support an injunction." Id. at 403. Here, because the Court expects to resolve the case within the redemption period, there is little evidence that the Plaintiffs will suffer irreparable injury. Consequently, the Plaintiffs must demonstrate a substantial likelihood that it will prevail on the merits to justify preliminary injunctive relief.

Based on the limited amount of information available for the Court to base any decisions on the merits of this case, the Court finds it difficult to evaluate fully the Plaintiffs' likelihood of success on the merits. The Plaintiffs' case appears to have some merit, but the Defendants' case, on first blush, seems to be strong.

Plaintiffs' claims arise under the Indian Nonintercourse Act ("INA"). 25 U.S.C. § 177. The Plaintiffs argue that under the INA, the IRS is without authority to sell the land in question to satisfy the tax. According to the Verified Complaint, the "INA prohibits any action by a state or the federal government which purports to divest a tribe of an interest in land, including the foreclosure of real estate." (Doc. 1 at p. 9).

The Indian Nonintercourse Act provides in part:

> No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.

25 U.S.C. § 177.

Indian title can be extinguished only with the consent of the federal government. Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 668-70 (1974). An attempted extinguishment of Indian title without federal approval will be considered void under the INA. See Bear v. United States, 611 F. Supp. 589, 597 (D.Neb. 1985). The purpose of the

10

INA is to "prevent unfair, improvident or improper disposition by Indians of lands owned or possessed by them to other parties, except the United States, without the consent of Congress, and to enable the government, acting as *parens patriae* for the Indians, to vacate any disposition of their lands made without its consent." Federal Power Commission v. Tuscarora Indian Nation, 362 U.S. 99, 119 (1960).

To establish a violation of the INA, a tribe must show that it (1) constitutes an "Indian tribe" within meaning of INA, (2) had interest in or claim to land protected by the INA, (3) has a trust relationship with the United States which has never been expressly terminated or otherwise abandoned, and (4) had its title or claim to interest in land extinguished without express consent of United States. See Bennett County, S.D. v. United States, 394 F.2d 8 (8th Cir. 1968). The first and third elements are satisfied here. The Court is unsure at this time whether a levy and seizure by the IRS constitutes express consent of the United States to extinguish title, or whether this land is protected by the INA.

Meanwhile, the Defendants have invoked the Anti-Injunction Act, which prohibits the federal courts from entertaining any action filed to restrain assessment or collection of taxes, unless the case comes within one of the statutory exceptions. 26 U.S.C. § 7421(a). Congress passed the Act in an effort to facilitate the expeditious collection of taxes by the government. See Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 7 (1962). The Act provides:

> **(a) Tax.** --Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(I), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

11

> **(b) Liability of transferee or fiduciary.** --No suit shall be maintained in any court for the purpose of restraining the assessment or collection (pursuant to the provisions of chapter 71) of--
>
> **(1)** the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any internal revenue tax...

26 U.S.C. § 7421(a) and (b)(1).

The Anti-Injunction Act not only prohibits suits to restrain the assessment or collection of a tax, but also prevents the district court from granting equitable relief which would enjoin the IRS from collecting its tax, unless an exception to the Act applies. See Shannon v. United States, 521 F.2d 56, 58 (9th Cir. 1975). The Anti-Injunction Act provides several specific statutory exceptions to its application. In addition to the statutory exceptions, a judicially crafted exception to the Act also exists. The Anti-Injunction Act does not bar suits to enjoin the assessment or collection of a tax when (a) the government has no chance of ultimately prevailing on its claim "under the most liberal view of the law and the facts" at the time of the suit; and (b) equity jurisdiction would otherwise exist. Enochs, 370 U.S. at 7-8; Pagonis v. United States, 575 F.3d 809, 813 (8th Cir. 2009); O'Hagan v. United States, 86 F.3d 776, 779 (8th Cir. 1996).

The questions, therefore, become whether the Anti-Injunction Act applies to the claim brought by the Tribe. If so, whether the Court may nonetheless exercise jurisdiction under a statutory exception or the judicially crafted exception; whether the INA applies; and, if so, whether the INA or the Anti-Injunction Act dictates the outcome of the issues in the case. Those issues are premature to determine at this stage of the case.

At this time, the Plaintiffs have not demonstrated such a substantial likelihood of prevailing to prompt the Court to issue an injunction despite the limited risk of irreparable

harm to the Plaintiffs. This is not to say that the Plaintiffs will not prevail. Rather, at this point, the case is not so compellingly in the Plaintiffs' favor to justify entry of injunctive relief where the harm does not appear to be immediate and irreparable.

### 4.     Public Interest

In evaluating the public interest in denying or granting the TRO motion or preliminary injunctive relief, this Court considers the public interest in both the positions of the Plaintiffs and the Defendants. Given that a preliminary injunction is an extraordinary remedy, the Court gives particular attention to the public consequences when considering the requested relief. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

The Court is very sensitive to the public interest in effective tribal self-governance, in allowing tribes to purchase and retain land that was previously held in trust, and in protecting land important to tribal economic development and cultural heritage. The Court takes judicial notice of the volume of information about poverty levels on Native American reservations in South Dakota. The impoverished state of the reservations in South Dakota, including the Crow Creek Indian Reservation, is a fact not subject to reasonable dispute and is generally known within the territorial jurisdiction of the Court. See Fed. R. Evid. 201(b). According to data from the United States Census Bureau, the Crow Creek Indian Reservation, located in parts of Buffalo, Hyde, and Hughes counties of South Dakota, has experienced particularly dire economic conditions and continuously high unemployment. The United States Census Bureau estimates that in 2008 in Buffalo County, on the Crow Creek Reservation, the median household income was $19,182, and 37.4% of its residents lived in poverty. The unemployment rate in Buffalo County was as high as 55.7% according

to the 2000 Census Demographic Information as compared to the statewide unemployment rate of 9.3% at the time. There exists a strong public interest in having more economic opportunities, less unemployment, and higher per capita income among the members of the Tribe.

The Tribe has a legitimate and compelling interest in safeguarding cultural heritage and providing for itself and its members economic opportunity by keeping tribal land in the hands of the Tribe or a tribal corporation. Although the Crow Creek Indian Reservation covers 400 square miles, roughly 201 square miles of it is held by the Tribe, tribal members, or the United States Department of Interior in trust. The rest is privately owned by non-tribal members. The IRS seizure of the LeMaster Ranch frustrates the Tribe's efforts to maintain ownership of land on the Crow Creek Indian Reservation.

However, this Court is cognizant of the strong public interest in the IRS collecting taxes owed and past due. The Tribe, in this case, is liable to the IRS for a considerable amount of delinquent employment taxes. The public has an interest in the Tribe paying the taxes owed in order to support the government's continued function. The public also has an interest in seeing that last-minute land transfers, bankruptcy filings later dismissed, and injunction actions not frustrate timely collection of past-due taxes.

### IV. Conclusion

After considering all of the Dataphase factors, the Court finds that there has not been an adequate showing to justify a temporary restraining order or preliminary injunction. Therefore, it is

ORDERED that the Plaintiffs' motion for a temporary restraining order (Doc. 7) is

and has been denied, and that no preliminary injunctive relief enters at this time. It is further

ORDERED that a court trial of this case is set for March 29 and 30, 2010.

Dated January 6, 2010.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE